IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHIPPING COMPANY CASTEL BRAZ N.V. AND DAMMER SHIPMANAGEMENT, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 08-CV-01217 |
| VS. | § § | |
| WARTSILA NORTH AMERICA, INC. AND WARTSILA TAIWAN, LTD., | § § § | |
| Defendants. | § § | |

## DEFENDANT WARTSILA NORTH AMERICA, INC.'s PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

Defendant Wartsila North America, Inc. ("WNA") files its Proposed Findings of Fact and Conclusion of law for trial of this action as follows:

### PROPOSED FINDINGS OF FACT

1. The F/V CASTEL BRAZ (hereafter "Castel Braz") is a fishing boat formerly owned by Plaintiffs. Plaintiffs sold the Castel Braz in late 2006 or early 2007.

2. Since at least 2000, Plaintiffs had contracted with WNA on several occasions for parts and service work for the boat's main engine.

3. Around October 2004, Plaintiffs requested a quotation from WNA to provide parts and services for a turbocharger overhaul on the Castel Braz main engine.

4. On October 5, 2004, Bruce Trent of WNA e-mailed Jim Sousa of Plaintiffs with a quotation for the parts necessary for the work, along with WNA's labor rate sheet and "General Terms and Conditions" for the sale of parts. Both the attached labor rate sheet, as well as Clause 9 of the attached "General Terms and Conditions Spare Parts,"

explicitly state that all services provided by WNA shall be governed by WNA's "General Terms and Conditions for Provision of Technical Personnel for Service and Other Work."

5. In addition, each page of WNA's quotation explicitly states as follows: "IF NOT OTHERWISE STATED, ALL SUPPLIES OF EQUIPMENT OR SERVICE ARE SUBJECT TO THE WARTSILA NORTH AMERICA, INC. GENERAL CONDITIONS (IN YOUR POSSESSION). THE COMPANY WILL SUPPLY COPIES OF THE GENERAL CONDITIONS UPON REQUEST."

6. On October 6, 2004, Sousa e-mailed Trent to inform him that the ship would dock in Kaohsuing, Taiwan and inquired whether WNA could provide engineers from Asia to perform the work because, due to the cost of fuel, Plaintiffs were "trying to save money everywhere we can." Subsequently, Trent notified Sousa that the work could be performed by personnel at Wartsila Taiwan.

7. On October 24, Plaintiffs accepted WNA's quotation and instructed WNA to promptly send the parts to Los Angeles for delivery to Taiwan.

8. After conversations between Wartsila Taiwan and the chief engineer for the Castel Braz about the work to be performed, WNA provided Sousa a "Service Estimate" for the work to be performed. The Service Estimate stated that WNA's general terms and conditions would govern the work. Sousa signed the Service Estimate on or about December 14, 2004.

9. From late December 2004 until early February 2005, Wartsila Taiwan performed the turbocharger overhaul and other services relating to the engine.

10. On March 24, 2005, WNA invoiced Plaintiffs in the amount of $64,910.03 for "Order No. 10065286 REBUILDING TURBOCHARGER AND EVALUATION."

D2F369CF77C14466: 0001

11. As with the quotation and labor rate sheets previously provided to Plaintiffs, the invoice from WNA again confirmed as follows: "IF NOT OTHERWISE STATED, ALL SUPPLIES OF EQUIPMENT OR SERVICE ARE SUBJECT TO THE WARTSILA NORTH AMERICA, INC.'S GENERAL CONDITIONS (IN YOUR POSSESSION). THE COMPANY WILL SUPPLY COPIES OF THE GENERAL CONDITIONS UPON REQUEST." With the invoice, WNA sent Plaintiffs a copy of the "General Terms and Conditions for Provision of Technical Personnel for Service and Other Work."

12. At no time did Plaintiffs object to the General Terms and Conditions provided to Plaintiffs and explicitly referenced in the quotation, labor rate sheets, and invoice.

13. On or about October 30, 2005, Eddie DaCosta, chief engineer for the Castel Braz, sent an e-mail to Trent from the boat's interim engineer, Robert Silva, complaining about exhaust and water leaks. This was the first time that Plaintiffs stated to WNA that the engine was sustaining problems that Plaintiffs attributed to the work performed by Wartsila Taiwan.

14. In November 2005, WNA service personnel inspected the boat in Majuro, Marshall Islands to investigate the reported water and exhaust leaks and recommended to Plaintiffs various repairs, including repairs to the exhaust system. Parts needed for the exhaust system repairs, however, were on back order, and Plaintiffs did not place an order for these parts.

15. In early December 2005, WNA personnel completed repairs relating to cylinder liners and heads. By this time, Plaintiffs knew that the ship needed the exhaust system repairs but chose to continue fishing. The Castel Braz departed Majuro and operated the next few weeks with little to no problems with the engine.

D2F369CF77C14466: 0001

16.     In late January 2006, based on inquiries from DaCosta and Sousa, Trent provided Plaintiffs with a quotation for the parts needed for the exhaust system repairs. Plaintiffs again chose not to place an order for the parts.

17.     Subsequently, Plaintiffs continued to complain about exhaust and water leaks and their alleged effects on the engine. The parties discussed arrangements for WNA to further investigate Plaintiffs' claims and make repairs.

18.     In late March 2006, WNA again provided Plaintiffs with a quotation for parts necessary for the exhaust system repairs and, on March 30, 2006, Jim Sousa placed an order for the parts.

19.     On or about April 21, 2006, Plaintiffs proceeded to Pohnpei, Micronesia to unload a catch of fish and was inspected by WNA service engineer, Harold Hicks. The parts recently ordered by Sousa were still on back order, and Hicks was unable to make the recommended repairs to the exhaust system. Plaintiffs chose to continue operating the ship with plans to dock in Australia at a later date for the recommended repairs.

20.     In early July 2006, the crankshaft on the ship's engine was severely damaged when the ship's navigator allowed the ship to over speed. The CASTEL BRAZ proceeded to a shipyard in Cairns, Australia to undergo repairs.

21.     Throughout their course of dealing with WNA from 2000 through 2006, Plaintiffs frequently received copies of "General Terms and Conditions Spare Parts" and the "General Terms and Conditions for Provision of Technical Personnel for Service and Other Work." At no time did Plaintiffs ever object to any of these terms and conditions.

D2F369CF77C14466: 0001

## PROPOSED CONCLUSIONS OF LAW

1.      WNA's "General Terms and Conditions Spare Parts" and "General Terms and Conditions—Technical Personnel for Service and Other Work" were incorporated into and made part of Plaintiff's contracts for WNA to provide parts or service to the Castel Braz. *Texaco Export, Inc. v. Overseas Tankship Corp.*, 477 F. Supp. 289, 292 n.9 (S.D.N.Y. 1979); *American Dredging Co. v. Plaza Petroleum Inc.*, 799 F. Supp. 1335 (S.D.N.Y. 1992), *vacated in part on other grounds by*, 845 F. Supp. 91 (S.D.N.Y. 1993); *Henkel Corp. v. Leggett & Platt, Inc.*, C.A. No. 09-cv-0463-RLW, 2009 WL 2230813 (N.D. Ga. July 24, 2009).

2.      Plaintiffs' claims for costs of repair/replacement and lost revenue are governed by the terms of Plaintiffs' contract with WNA, and the "economic loss" doctrine precludes Plaintiff from circumventing the contract and recovering such damages in tort. Thus, Plaintiffs' claims for negligence and strict liability are barred as a matter of law. *Nathaniel Shipping, Inc. v. Gen. Elec. Co.*, 932 F.2d 366, 368 (5th Cir. 1991); *Princess Cruises, Inc. v. Gen. Elec. Co.*, 950 F. Supp. 151 (E.D. Va. 1996).

3.      Plaintiffs' contract explicitly disclaims any implied warranties on the part of WNA, and thus, Plaintiffs' claim for breach of the implied warranty of workmanlike performance is barred as a matter of law.

4.      Further, Plaintiffs' contract disclaims all consequential or incidental damages against WNA and limits WNA's liability to Plaintiffs to a maximum of $50,000. The clauses are valid and enforceable under both maritime and New York law. *See Alcoa Steamship Co. v. Charles Ferran & Co.*, 383 F.2d 46, 54-55 (5th Cir. 1967); *Diesel "Repower", Inc. v. Islander Inves. Ltd.*, 271 F.3d 1318, 1324-25 (11th Cir. 2001); *see*

D2F369CF77C14466: 0001

*Rector v. Calamus Group, Inc.*, 794 N.Y.S.2d 470, 471 (App. Div. 2005); *Mom's Bagels of New York, Inc. v. Sig Greenebaum, Inc.*, 559 N.Y.S.2d 883, 885 (App. Div. 1990).

5.  WNA has not breached any legal duty owed to Plaintiffs, and the proximate and/or superseding cause of the damages alleged by Plaintiffs was their continued operation of the Castel Braz for several months and failure to order parts after being advised by WNA in November 2005 that the exhaust system needed to be repaired.

Respectfully submitted,

By: _____
George T. Shipley
State Bar No. 18267100
SHIPLEY SNELL MONTGOMERY LLP
4600 First City Tower
1001 Fannin
Houston, Texas 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057

ATTORNEYS FOR DEFENDANTS
WARTSILA NORTH AMERICA, INC.
AND WARTSILA TAIWAN, LTD.

OF COUNSEL:

Jonathan B. Smith
State Bar No. 24013528
SHIPLEY SNELL MONTGOMERY LLP
4600 First City Tower
1001 Fannin
Houston, Texas 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057

D2F369CF77C14466: 0001

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via e-mail on all counsel of record on February 25ᵗʰ, 2010 as follows:

William A. Durham
Mary Holmesly
EASTHAM, WATSON, DALE & FORNEY, L.L.P.
20th Floor, Niels Esperson Building
808 Travis
Houston, Texas 77002
*Attorneys for Plaintiffs*

_____
Jonathan B. Smith

D2F369CF77C14466: 0001